FILED
APR 26 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

Lorie Lynn Rones, DEBTOR                           : Case No.: 18-00728
                                                   :
Walter L. Peacock, NON_FILING Spouse               : TRIAL DATE: May 2, 2019
                                                   :
Nancy Spencer Grigsby, TRUSTEE                     : Chapter 13

## OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY
### Real Property at 2922 Pennsylvania Ave SE, Washington, D.C. 20020

Walter Peacock, Pro SE (Peacock), respectfully opposes HSBC Bank USA, National Association, as Trustee for Nomura Home Equity Loan, Inc., Asset-Backed Certificates, Series 2006-FM2, Movant (Ocwen Loan Servicing LLC), Servicer (the "movant") Motion Seeking Relief from Automatic Stay and Co-Debtor Stay and to Reclaim Property, because Peacock is uncertain that they are in the arrearage for the post-petition payments as alleged by the movant.

In support of this opposition, Peacock states as follows:

1.      On November 9, 2018, the debtor(s) filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

2.      On or about April 9, 2019, the movant filed the above-referenced motion, alleging that the debtor(s) are in the arrearage with the post-petition payments due to the movant. It should be noted that the DEBTOR is not a party to the NOTE referenced by the Movant. DEBTOR is however on the Deed.

3.      The Movant's accounting is in error and fails to account for a nearly $26,000 reduction in the property taxes assessed on the property back to 09/01/2018. Movant continues to require the monthly payment be made which includes the inflated property tax which is nearly 10 times more than the amount required. The Movant's requirement to include the inflated escrow amount as part of the monthly payment has made the monthly payments very difficult to meet. The debtor(s) intends to confer with the movant as to updating the monthly payment to reflect the tax assessment and propose a repayment plan. See EXHIBIT 1.

4.      Peacock is also independently pursuing a loan modification package with Ocwen.

5.      Peacock is including expert witness testimony with regards to Movant's lack

of standing due to the use of Forgery in the Indorsement in Blank.  Peacock will challenge Movant's

Business Records when produced.  See EXHIBIT 2.  Movant's status as the holder of the Note is

disputed.  The endorsement in blank did not appear in the note loan documents until sometime

after the year 2012.  The alleged note has previously been presented by the Movant's loan

servicers, Litton and Ocwen several times in which it does not have the blank indorsement.

6.    Peacock hereby requests to inspect Creditor's business records as offered by
Movant and to produce the original Note.

7.    Peacock is maintaining the property in good repair which minimizes
Movant's risk.

8.    Therefore, Peacock requests that the Motion filed by the movant be denied.

WHEREFORE, for these and such other reasons as may appear to the Court, Peacock
respectfully requests that the movant's motion be denied.

By    _Walter L. Peacock_
Walter L. Peacock, Pro SE
2920 Pennsylvania Avenue, SE
Washington, D.C.  20020
Telephone: 202-710-0883

## CERTIFICATE OF SERVICE

I hereby certify that on April 26, 2019, the foregoing OPPOSITION TO MOTION FOR RELIEF FROM AUTOMATIC STAY Real Property at 2922 Pennsylvania Ave SE, Washington, D.C. 20020 was mailed, via First Class Mail to the Chapter 13 Trustee, Nancy L. Spencer Grisby, Attorney Kevin Judd and mailed via First Class Mail to:

Copies to:

Nancy L. Spencer Grisby, Bankruptcy Trustee
185 Admiral Cochrane Drive
Annapolis, MD 21401

Kevin D. Judd, Esq.
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004

Dinh Ngo, Esq.
Attorney for Movant
Bar No. VA055
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196

Walter L. Peacock

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

IN RE:

Lorie Lynn Rones, DEBTOR                          : Case No.: 18-00728
                                                  :
Walter L. Peacock, NON_FILING Spouse              : TRIAL DATE: May 2, 2019
                                                  :
Nancy Spencer Grigsby, TRUSTEE                    : Chapter 13

**ORDER**

Upon consideration of Debtor's OPPOSITION TO MOTION FOR RELIEF

FROM AUTOMATIC STAY Real Property at 2922 Pennsylvania Ave SE, Washington,

D.C. 20020 and the entire record herein, ORDERED, that the Motion Seeking Relief from

Automatic Stay and Co-Debtor Stay and to Reclaim Property is hereby denied.


Copies to:

Nancy L. Spencer Grisby, Bankruptcy
Trustee 185 Admiral Cochrane Drive
Annapolis, MD 21401

Kevin D. Judd, Esq.
601 Pennsylvania Avenue, NW
Suite 900 - South Building
Washington, DC 20004

Dinh Ngo, Esq.
Attorney for Movant
Bar No. VA055
McCabe, Weisberg & Conway, LLC
312 Marshall Avenue, Suite 800
Laurel, MD 20707
301-490-1196
bankruptcyva@mwc-law.com


End of Order

EXHIBIT 1

Ocwen is escrowing **$28,103.00** for the annual tax assessment in their online system.



| | Welcome Walter L Peacockl | | | | | |
|---|---|---|---|---|---|---|
| | My Profile ▶ | | TAXES / INSURANCE | | | |
| | Loan Number: | | ⊟ Taxes / Insurance | | | |
| | 7091159660  1st Lien ▾ | | | | | |
| | 2922 Pennsylvania Ave Se | | | | | |
| | Washington, DC 20020-3837 | | | | | |

| Description | Pay To | Policy ID or Parcel # | Payment to be Made By | Amount (annually) | Paid/Coverage Through |
|---|---|---|---|---|---|
| County Tax | DISTRICT OF COLUMBIA (WASHINGT | 5546 0807 | Ocwen | $28,103.00 | Sep 2019* |

Payment Plan based on the above tax assessment with **11.8%** interest.

| Name: | Lorie Lynn Rones | | | | | |
|---|---|---|---|---|---|---|
| BK Case Number: | 18-00728-SMT | | | | | |
| Filing Date: | 11/09/2018 | | | | | |
| Completed by: | parvatim | | | | | |
| Due Date | Total Payment | Principal | Interest | Escrow | Optional Products | NOPC Filed Date |
| 12/1/2018 | $          4,693.84 | $    278.38 | $  1,935.30 | $  2,480.16 | $            – | |
| 1/1/2019 | $          4,693.84 | $    281.13 | $  1,932.55 | $  2,480.16 | $            – | |
| 2/1/2019 | $          4,693.84 | $    283.91 | $  1,929.77 | $  2,480.16 | $            – | |
| 3/1/2019 | $          4,693.84 | $    286.71 | $  1,926.97 | $  2,480.16 | $            – | |
| Total Due | $        18,775.36 | $  1,130.13 | $  7,724.59 | $  9,920.64 | $            – | |

However, the above tax assessment is not correct.  Ocwen is charging me over 10 times the actual assessed rate of only $2,534.62.  Below payments using the correct tax assessment and with 4% interest.

| | 18-00728-SMT | | | |
|---|---|---|---|---|
| | Total Payment | Principal | Interest @4.0% | Escrow |
| 12/1/2018 | $     1,379.47 | $     310.27 | $     719.73 | $     349.47 |
| 1/1/2019 | $     1,379.47 | $     311.30 | $     718.70 | $     349.47 |
| 2/1/2019 | $     1,379.47 | $     312.34 | $     717.66 | $     349.47 |
| 3/1/2019 | $     1,379.47 | $     313.38 | $     716.62 | $     349.47 |
| Total Due | $     5,517.88 | $  1,247.29 | $  2,872.71 | $  1,397.88 |

1



Government of the District of Columbia
Office of the Chief Financial Officer
Office of Tax and Revenue

1101 4th Street, SW
Washington, D.C. 20024

Notice Number: 0705244190406                          Tax Year 2019 is October 1, 2018 thru September 30, 2019 Class 001

### CORRECTED BILL

| Square | Suffix | Lot | Property Address | Mrtg. No. | Assessment | Tax Rate/$100 | Annual Tax |
|--------|--------|-----|------------------|-----------|------------|---------------|------------|
| 5546 | | 0807 | 2922 PENNSYLVANIA AV SE | | $298,190 | 0.85 | $2,534.62 |

| DESCRIPTION | TAX | PENALTY | INTEREST | PAYMENT | TOTAL |
|-------------|-----|---------|----------|---------|-------|
| Credit From a Prior Billing Period | | | | | -$19,882.87 |
| 2019 First Half | $1,267.31 | | | | $1,267.31 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| **Total** | | | | | **-$18,615.56** |

**$18,615.56 Overpayment is refundable to Ocwen.  (b)(2) below applies.**

**D.C. Law Library.**

### § 47–811.02. Overpayment; credit or refund; interest.

(a) Subject to subsection (b) of this section, if there is a payment of real property tax that results in an overpayment for a billing period or levy with priority, the overpayment shall be credited in order of priority against the real property tax owing on the property for a subsequent billing period or  levy.

(b) The Mayor shall refund the payment, less the real property tax owing, to the person who made the payment; provided, that the refund shall not be allowed unless:

(1) A claim for refund within 3 years from the date the payment was  made;

**(2)The Office of Tax and Revenue has corrected or changed an assessment or real property classification under § 47-825.01a(f) which created the  overpayment;**

(3) The property has been so reassessed under § 47-831 that an overpayment resulted for the periods of reassessment;

(4) The tax was abated for reasonable cause under § 47-1007;  or

(5) The refund results from the grant of a real property tax  exemption.

(c) A claim for refund shall be made in the manner prescribed by the  Mayor.

(d) The District of Columbia shall pay interest on the overpayment beginning 90 days after the receipt

of the claim for refund.

(e) The interest payable by the District under subsection (d) of this section shall be at the rate provided in § 47-3310(c).

(f) The owner, after seeking refund of the overpayment as set forth in this section, may, within one year from the last day of the tax year in which the claim for refund was made, file suit in the Superior Court of the District of Columbia in the same manner and to the same extent as provided in §§ 47-3303 and 47-3304; provided, that the real property tax, including any penalties and interest, shall have first been paid.

(g) This section shall not apply to an action timely filed under § 47-825.01a(g) and (h).

---

PROPOSED REPAYMENT PLAN:

With the more realistic payment amounts and the correct escrow property taxes, Peacock will be able to make monthly mortgage payments and also make additional payments toward the missed payments since the bankruptcy.  It should be noted that the Debtor is not a party to the Note.  However, Debtor is on the Deed.

| Date | Payment Amt | Back Payment | |
|---|---|---|---|
| 5/30/2019 | $ 1,379.47 | $ 689.74 | |
| 6/30/2019 | $ 1,379.47 | $ 689.74 | 12/1/2018 |
| 7/30/2019 | $ 1,379.47 | $ 689.74 | |
| 8/30/2019 | $ 1,379.47 | $ 689.74 | 1/1/2019 |
| 9/30/2019 | $ 1,379.47 | $ 689.74 | |
| 10/30/2019 | $ 1,379.47 | $ 689.74 | 2/1/2019 |
| 11/30/2019 | $ 1,379.47 | $ 689.74 | |
| 12/30/2019 | $ 1,379.47 | $ 689.74 | 3/1/2019 |
| 1/30/2020 | $ 1,379.47 | $ 689.74 | |
| 2/29/2020 | $ 1,379.47 | $ 689.74 | 4/1/2019 |
| 3/30/2020 | $ 1,379.47 | | |

EXHIBIT 2

EXHIBIT 2 handwriting expert determines that the two Doug Pollock signatures below were not recorded by the same person.  With the non-indorsement signature having a witness.

Pay to the order of without recourse.

Fremont Investment & Loan
Doug Pollock
Assistant Vice President

IN WITNESS WHEREOF, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this 13th day of FEBRUARY . 2007 .
Signed, Sealed and Delivered in the presence of or attested by:

FREMONT INVESTMENT & LOAN

C. MINA

By: DOUG POLLOCK, ASST. VICE PRESIDENT

WHEN RECORDED MAIL TO:

Fremont Investment & Loan
Attn: Carol Mina
1041 N. PacifiCenter Drive
Anaheim, CA 92806

CA 92834-3407

## AFFIDAVIT OF WENDY CARLSON

BEFORE ME, the undersigned authority, personally appeared WENDY CARLSON and swears as follows:

1. My name is Wendy Carlson. I am of sound mind, over the age of eighteen years, capable of making this Affidavit, and I am personally acquainted with the facts herein.

2. I am a forensic document examiner and handwriting expert. I have examined more than 12,000 documents and given opinions regarding authentication of documents and handwriting in more than 1,000 cases. I have testified and/or been appointed by the court in legal proceedings regarding document and handwriting examination approximately 100 times since 2008.

3. My education includes a comprehensive two-year apprenticeship through the International School of Forensic Document Examination and mentorship under some of the leading document examiners in the nation including Bart Baggett, Robert Baier, and Don Lehew.

4. I have co-authored a book and taught a course in "How to Spot a Forgery" to the State of Colorado, Denver Elections Division in 2011, 2012, 2013 and 2014 and Kansas Elections in 2016. I have also taught introductory courses to Jesuit College Preparatory School and Irma Lerma Rangel Leadership School in Dallas, Texas and the Colorado County Clerk's Association in Pueblo, Colorado.

5. I have completed forensic document examinations for government entities such as Department of the Army, Fort Hood, Grand Prairie Police Department, Hill County and State Bar of Texas in Texas; Offices of the State or Federal Public Defenders in Nevada, New York and Wyoming; Office of the General Counsel in Oklahoma; Buena Vista Police Department, Chaffee County Sheriff's Department, City and County of Denver in Colorado, and Simcoe County, Ontario, Canada.

6. My expertise in handwriting analysis and document examination has been featured on ABC, CBS, CNN, Discovery Channel, The Dallas Morning News, The Denver Post, The Houston Chronicle, and Time-Warner Cable in Austin, Texas.

7. A true and correct copy of my Curriculum Vitae is attached hereto and referenced as Exhibit 1.

8. I was asked to render an opinion regarding the Doug Pollock signature on an Endorsement signature stamp to an Adjustable Rate Note, dated May 9, 2006, bearing a signature of Doug Pollock. I have labeled and included this exhibit herein as 'Q1'.

9. I have examined and compared the questioned signature to one (1) document bearing a purported known signature of Doug Pollock, labeled herein as 'K1'.

10.    I have compared the Doug Pollock signature on the questioned document to the Doug Pollock signatures on the known document to determine if the Doug Pollock signature on the questioned document was authored by the same person who wrote the name of Doug Pollock on the known document.

11.    Handwriting is not simply "hand" writing but "brain" writing.  Handwriting is formed by repeated habits of writing by the author, which are created by neural pathways established in the brain.  These neural pathways control muscular and nerve movement for writing, whether the writing is executed by hand, foot, or mouth.  An examination of handwriting includes establishing patterns of writing habits to help identify the author.

12.    A meticulous examination and side-by-side comparison of the questioned Doug Pollock signature to the known Doug Pollock signature was conducted using the unaided eye, handheld magnifying loupes, photocopy enlargements and metric measuring devices.  The scientific methodology used in this examination consists of the "ACE" method, which means "Analyze, Compare and Evaluate," the same method reportedly used by the FBI and the U.S. Treasury Department, in their questioned document laboratories, and suggested by the standards recommended by ASTM/SWGDOC guidelines.  This method was also accepted and affirmed by the District of Columbia Court of Appeals in Case No. 08-CF-1361, *Pettus v. United States*.

13.    My hypothesis was formed without bias as to authorship of the questioned Doug Pollock signature.  My examination revealed significant dissimilarities when compared to the known Doug Pollock signature.  All tests were done with accepted scientific methodology, techniques, and scientific instruments, which helped to confirm authorship of the questioned signature.

14.    In support of my opinion I have included an excerpt from *Handwriting Identification, Facts and Fundamentals* by Roy A. Huber and A.M. Headrick (CRC Press LLC, 1999, pp 50-51) wherein the leading forefathers of document examination in the USA agree that one significant difference in the fundamental structure of a writing compared to another is enough to preclude common authorship:

[Ordway] Hilton stated:  "It is a basic axiom of identification in document problems that a limited number of basic differences, even in the face of numerous strong similarities, are controlling and accurately establish nonidentity."

and,

[Albert S.] Osborn and others have generally agreed that despite numerous similarities in two sets of writings, a conclusion of identity cannot be made if there is one or more differences in fundamental features of the writings.

15.    Based on my scientific examination and lack of agreement of the unique, identifiable handwriting characteristics and the measurable distinctions in the questioned signature, it is my professional expert opinion that a different person wrote the name of Doug Pollock on the questioned document.  The patterns of handwriting in the Doug Pollock signature

2

on the questioned document do not conform to the patterns of writing in the known Doug Pollock signature. Therefore, it is my professional expert opinion that a different person signed the Doug Pollock signature on the questioned document 'Q1'.

FURTHER, AFFIANT SAYETH NAUGHT.

Respectfully submitted,

Wendy Carlson
Forensic Document Examiner

STATE OF TEXAS          §
                        §
COUNTY OF ROCKWALL §

On this **25** day of August in the year 2016, before me, the undersigned, personally appeared Wendy Carlson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the above Affidavit of Wendy Carlson regarding the questioned Doug Pollock signature and acknowledged to me that she executed the same in her capacity and the statements herein are true.

NOTARY PUBLIC / STATE OF TEXAS

VICTOR HERNANDEZ
My Commission Expires
May 31, 2019

Texas:
3021 Ridge Road, Suite A-130
Rockwall, Texas 75032
Phone: (214) 458-6009
Fax: (303) 265-9087

Colorado:
1550 Larimer Street, Suite 251
Denver, Colorado 80202
Phone: (303) 330-8636
Fax: (303) 265-9087

## Wendy Carlson
Expert Document Examiner
www.AmericasHandwritingExpert.com
ws.carlson@yahoo.com

## Curriculum Vitae

### Qualifications:

Wendy Carlson is a Court Qualified Forensic Document Examiner.  Ms. Carlson has been qualified as an Expert by State, Local, and Federal courts and has testified in Arizona, Arkansas, Colorado, Florida, Michigan, Mississippi, Missouri, New York, Oklahoma, Pennsylvania, South Dakota, Texas, Utah, Virginia, Washington, Wyoming and Nassau, Bahamas.  She has studied handwriting and document examination and apprenticed under some of the leading court-qualified Forensic Document Experts in the U.S.A.  Wendy has been appointed by federal and state court judges to render opinions on handwriting issues in Colorado and Texas and has completed forensic document examinations for government entities such as Department of the Army, Ft. Hood, Texas, Grand Prairie Police Department, Hill County and State Bar of Texas in Texas; Offices of the State or Federal Public Defenders in Nevada, New York and Wyoming; Office of the General Counsel in Oklahoma; Buena Vista Police Department, Chaffee County Sheriff's Department, City and County of Denver in Colorado, Clark County, Nevada,  and Simcoe County, Ontario, Canada.

In the last seven years, Ms. Carlson has examined more than 12,000 documents and rendered opinions in approximately 1,000 active cases and peer reviews involving questioned signatures, altered documents, handwritings, legal contracts, court documents, anonymous writing, and graffiti.  Ms. Carlson has rendered opinions on documents from clients in the following states and foreign countries:  Alabama, Alaska, Arkansas, Arizona, California, Colorado, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, West Virginia, Wisconsin, Wyoming, Washington D.C., Albania, Antigua & Barbuda, Bahamas, Canada, Chile, Cook Islands, Estonia, Haiti, Hong Kong, India, Kenya, Liberia, London, Morocco, New Zealand, Puerto Rico and Ukraine.  Ms. Carlson has examined documents and rendered opinions for handwriting comparisons written in Afghani, Arabic, Chinese, Eastern Indian, English, Greek, Korean and Spanish writing.

Ms. Carlson's expertise has been featured in CNN, The Dallas Morning News, The Denver Post, and The Houston Chronicle, as well as investigative reports by ABC's The Denver Channel and CBS4 in Denver, Colorado, Time Warner Cable News in Austin, Texas, and has been inquired of by an investigative reporter for Yahoo.  Ms. Carlson has been hired by the State of Colorado's Denver Election Division and the State of Kansas' Riley Election Division to teach employees and clerks how to identify a questioned signature prior to the 2011, 2012, 2013, 2014 and 2016 local and national elections.

### Forensic Examination Provided For:

Disputed documents or questioned signatures on wills, checks, contracts, deeds, account ledgers, suspect documents, forgeries, identity theft, anonymous letters and writings, alterations, obliterations, erasures, typewritten documents, altered medical records, graffiti, handwritten numbers, computerized and/or handwritten documents, suicide notes, and autograph authentication.

### Education:

International School of Forensic Document Examination, Los Angeles, California, 2007-2009

Certification after completion of a two-year course and apprenticeship under leading authorities in the field of Forensic Document Examination and Handwriting Identification from the International School of Forensic Document Examination.  Attended weekly classes, lectures and teleseminars from Court Qualified

1   EXHIBIT

Printed August 25, 2016

Document Examiners and Instructors Bart Baggett, Robert Baier, Don Lehew, and Beth Chrisman.  Prepared for, observed, and testified in actual court trials.

*Twelve years experience* assisting multiple trial attorneys in case and trial presentation, 1996-2008

*American College of Forensic Examiners International*

> Certification after Completion of Registered Investigator Course, July 2010
> Certification after Completion of Crime Scene Investigation Course, November 2010
> Certification after Completion of Digital Forensics Introduction Course, November 2010

*American Institute of Applied Science, Inc.*

> Completed lessons and exams for Questioned Documents course, April 2012

**Specific Areas of Training:**

Handwriting Identification and Discrimination, Signature Comparison, Techniques for Distinguishing Forged Signatures, Disguised Handwriting, Hand Printing, Block Printing, Altered Numbers, Anonymous Writing, Factors that Affect Writing, Altered Documents, Trial and Deposition Preparation, Document and Exhibit Preparation for Court, Discriminating Elements of Handwriting, Obliterated Writing, Ethics Requirements of a Document Examiner.

**Laboratory Equipment and Library Available for Use in Examination:**

Richter Optica S6.6 LCD Stereo Zoom Microscope with screen and camera, handheld magnifying devices and loupes of 3x-20x, digital calipers, Light Tracer light box, protractors, metric measuring devices, portable black light, Kodak 10x Optical IS digital camera, iMac computer and software, 21.5-inch flat screen monitor, multiple scanner, printers and copiers.  Various books and articles on document examination, handwriting, and hundreds of detailed case studies from actual cases.

**Professional Memberships:**

> Scientific Association of Forensic Examiners
> American College of Forensic Examiners International, Diplomate
> Forensic Expert Witness Association
> Sheriff's Association of Texas
> Texas Police Association

**Publications:**

> How to Spot a Forgery
> Working With an Expert Witness

**Lectures, Seminars and Continuing Education:**

| | |
|---|---|
| 11/12/08 | The Scope and Sources of Document Examination; Instructor: Bart Baggett |
| 12/03/08 | Science, Scientific Method, and Writing Identification; Instructor: Bart Baggett |
| 12/10/08 | Review and Discussion of American Society for Testing and Materials; Instructor: Bart Baggett |
| 12/12/08 | Assistance in preparation and observation of forgery trial held in the Bahamas with C. L. Baggett |
| 02/18/09 | Understanding the Trial; Instructor: Bart Baggett |
| 02/28/09 | Real Case Mock Trial |
| 03/11/09 | A Guide to Law and the Courts, and Rules of Evidence; Instructor: Bart Baggett |
| 03/25/09 | Real Case Mock Trial |
| 06/23/07 | Trial and deposition appearance, testimony, and presentation; Lecturer: Carolyn West |
| 07/02/09 | ASTM Guidelines; Instructor: Bart Baggett |
| 07/09/09 | Jury Selection and an Understanding the Law and the Courts; Real Case Mock Trial; Instructor: Bart Baggett |
| 07/23/09 | The Rules and Future Challenges to the Expert; Instructor: Bart Baggett |
| 09/25/09 | Critical Incident Stress:  Statement Analysis and Interview v. Interrogation; Instructor: Faith Wood |
| 01/28/10 | Working with the Expert Witness...the Plaintiff Attorney's Prospective; Lecturer:  Windle Turley, Esq. |
| 07/15/10 | Certification after Completion of Registered Investigator Course, ACFEI, July 2010 |

Printed August 25, 2016

| | |
|---|---|
| 08/14/10 | Forensic Document Examination Seminar training and instruction with Instructor Bart Baggett and Instructor Robert Baier |
| 08/14/10 | Identity Theft and Prevention; Instructor Robert Baier |
| 08/15/10 | Testing of students for Certification at Handwriting University |
| 08/31/10 | Introduction to Forensic Document Examination; Instructors Bart Baggett and Beth Chrisman |
| 09/29/10 | Attendance and observation of deposition held in Texas with C. L. Baggett |
| 10/01/10 | Lecturer and Instructor - Introduction to Forensic Document Examination, Clear Lake High School, Houston, Texas |
| 11/08/10 | CLE:  Demystifying Daubert:  Daubert's Effect on Your Work as an Expert Witness; presented by The TASA Group, Inc. |
| 11/16/10 | Certification after Completion of Crime Scene Investigation Course, ACFEI, November 2010 |
| 11/16/10 | Certification after Completion of Digital Forensics Introduction Course, ACFEI, November 2010 |
| 04/15/11 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 03/08/12 | Continuing research on Science and the Scientific Method |
| 03/11/12 | Research on the Significance of Measurements in Forensic Document examination |
| 04/02/12 | Research on Disguised Handwriting |
| 04/06/12 | Completed American Institute of Applied Science, Inc. lessons and exams for Questioned Documents course |
| 06/08/12 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 08/17/12 | Attendance and observation of criminal trial with Bart Baggett, Expert QDE, in Los Angeles, California |
| 10/12/12 | Lecturer and Instructor - Refresher Course:  "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 10/16/12 | Research regarding ESIGN, electronic documents and records, and electronic signatures |
| 12/15/12 | Speaker - Holographic Wills and Signatures, Military Order of Purple Hearts Annual Meeting, Dallas, Texas |
| 02/05/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Jesuit College Preparatory School, Forensic Science Department, Dallas, Texas |
| 02/21/13 | Speaker - Introduction to the Science of Handwriting and Document Examination, Irma Lerma Rangel Young Women's Leadership School, Dallas, Texas |
| 02/20/14 | Expert Witnesses and Lawyers Caught Off Guard:  Lessons Learned, EJ Janik, Gary Kessler, Esq. |
| 10/18/13 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 05/14/14 | Research on handwriting of individuals with Parkinson's Disease |
| 06/06/14 | Lecturer and Instructor - "How to Spot a Forgery", Denver Elections Division, Denver, Colorado |
| 06/23/14 | Instruction and Training of new ballot and voter signature input equipment and software, Denver Elections Division, Denver, Colorado |
| 01/19/15 | Lecture and Presentation/Training – "How to Spot a Forgery", Colorado County Clerks Association, Pueblo, Colorado |
| 09/10/15 | Certificate of Completion for "Teaching Forensic Handwriting Analysis Using The Simpsons", ACFEI continuing education |
| 09/19/15 | Forgeries, Forensics and Identification Through Handwriting, Beth Chrisman |
| 02/09/16 | Lecturer and Instructor - "How to Spot a Forgery", Riley County Elections, Manahattan, Kansas |
| 03/07/16 | Completed and passed ten proficiency tests from the International School of Forensic Document Examination, California |

*Printed August 25, 2016*

Pay to the order of
without recourse,

Fremont Investment & Loan
Doug Pollock
Assistant Vice President

QDE EXHIBIT

Q1

# ADJUSTABLE RATE NOTE
### (6-Month LIBOR Index - Rate Caps)
### (Assumable during Life of Loan) (First Business Day of Preceding Month Lookback)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

May 9, 2006                    BREA, CA 92821
    [Date]                                [City]                                    [State]

2922 PENNSYLVANIA AVENUE SE, WASHINGTON, DC 20020

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 217,750.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is FREMONT INVESTMENT & LOAN

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 11.850 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on July 1, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on June 1, 2036 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 2727 E IMPERIAL HIGHWAY, BREA CA 92821

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 2,214.70 . This amount may change.

### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

---

**MULTISTATE ADJUSTABLE RATE NOTE - 6-Month LIBOR Index (Assumable during Life of Loan) (First Business Day Lookback) - Single Family - Freddie Mac UNIFORM INSTRUMENT**

VMP-815N (0404)          Form 5520 3/04

VMP Mortgage Solutions (800)521-7291

Page 1 of 4                    Initials: _____



## 4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A)   Change Dates**

The interest rate I will pay may change on the first day of **June 1, 2008**, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B)   The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in The Wall Street Journal. The most recent Index figure available 45 days before each Change Date is called the "Current Index.'

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding **Six and Ninety-Nine Hundredths** percentage points ( **6.9900** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than **14.850** % or less than **11.8500** %. Thereafter, my interest rate will never be increased or decreased on any subsequent Change Date by more than **1.5000** from the rate of interest I have been paying for the preceding period. My interest rate will never be greater than **17.8500** % or less than **11.8500** %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.   BORROWER'S RIGHT TO PREPAY

**★SEE PREPAYMENT RIDER ATTACHED HERETO AND MADE A PART HEREOF★**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a Prepayment. When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **6.0** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Form 5520 3/04
Initials: ___

00030036   Bk: 8357 Ps:    9

AND the Assignor covenants that there is now due and owing the said Mortgage and the Bond, Note or other Obligation secured thereby, the sum of   $  232,000.00                        Dollars principal with interest thereon to be computed at the rate of   9.500                        percent per year from  12/22/2006                    , and that there are no set-offs, counterclaims or defenses against the same, in law or in equity, nor have there been any modifications or other changes in the original terms thereof, other than as stated herein.

In all references herein to any parties, entities or corporations the use of any particular gender or the plural or singular number is intended to include the appropriate gender or number as the text of the within instrument may require.

IN WITNESS WHEREOF, the said Assignor has hereunto set his hand and seal or caused these presents to be signed by its proper corporate officers and its corporate seal to be hereto affixed this   13th      day of  FEBRUARY   ,  2007   .
Signed, Sealed and Delivered in the presence of or attested by:

FREMONT INVESTMENT & LOAN

_____                    By: _____
C. MINA                                              DOUG POLLOCK, ASST. VICE PRESIDENT

WHEN RECORDED MAIL TO:

Fremont Investment & Loan
Attn: Carol Mina
1041 N. PacifiCenter Drive      CA 92834-3407
Anaheim, CA 92806

Loan -898(NJ)(9906).02                    Page 2 of 2

QDE EXHIBIT

K1

00030036   Bk: 8357 Pg:    6 7

REC'D & RECORDED
Oct 15, 2007 01:08:48P
ERMA GORMLEY
SUSSEX COUNTY CLERK
NEWTON, NJ

3000000954732
1001944-3000954732-7    MERS Phone: 1-888-679-6377

# ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS THAT FGC Commercial Mortgage
Finance, DBA Fremont Mortgage                       , existing under the laws of the
CALIFORNIA                              , residing or located at
2727 East Imperial Highway                                        , in the City of
Brea                            , in the County of ORANGE                     and in
the State of CALIFORNIA                   herein designated as the Assignor, for and in consideration
of the sum of ONE DOLLAR and other good and valuable consideration, the receipt whereof is hereby
acknowledged, does by these presents assign to MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC., ITS SUCCESSORS AND ASSIGNS
residing or located at P.O. BOX 2026
in the City of FLINT, MI    48501-2026        , the County of
and State of  DELAWARE               , herein designated as the Assignee, a certain Mortgage dated
December 22, 2006      , made by   DEAN M CIARDI and WENDY S CIARDI,
husband and wife

on real property located in the   CITY                                       of
Hopatcong                                                              in the
County of  Sussex                      and State of New Jersey:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART THEREOF

to secure payment of the sum of Two Hundred Thirty-Two Thousand  and 0/100ths

which mortgage is recorded in the clerk's office of the County of Sussex                in
Book  7953                       of Mortgages on Page  257   recorded 1-11-07
   TOGETHER with the Bond, Note or other Obligation therein described, and the money due and to
grow due thereon, with the interest. TO HAVE AND TO HOLD the same unto the said Assignee forever,
subject only to all the provisions contained in the said Mortgage and the Bond, Note or other Obligation.
AND the said Assignor hereby constitutes and appoints the Assignee as the Assignor's true and lawful
attorney, irrevocable in law or in equity, in the Assignor's name, place and stead but at the Assignee's cost
and expense, to have, use and take all lawful ways and means for the recovery of all the said money and
interest; and in case of payment, to discharge the same as fully as the Assignor might or could do if these
presents were not made.

New Jersey Assignment of Mortgage
VMP -995(NJ) (9908).02                         Page 1 of 2
                            VMP MORTGAGE FORMS - (800)521-7291                        8/99

FQUEZADA-01/22/2007

00030036   Bk: 8357  Ps:      7

# UNITED GENERAL TITLE INSURANCE COMPANY

## SCHEDULE C

Commitment/File Number: PAT01055

The land referred to in this Commitment/Policy is described as follows:

Being known and designated as Lot 8, in Block 119, as shown on a certain map entitled "Map of Section 8, Block No. 119 to 137", Hopatcong Borough, County of Sussex, State of New Jersey, and filed in the Sussex County Clerk's Office on July 19, 1955, as Map No. 338-J.

*FOR INFORMATION PURPOSES ONLY:*

BEING Known as Lot 42, Block 11209, on the Official Tax Map of Hopatcong Borough

BEING commonly known as 15 Squire Road, Hopatcong, New Jersey

Commitment Schedule A UGT Form No. 151 (7/31/00)

00030036   Bk # 8357  Pg #    8

Loan #: 3000954732-7

State of **CALIFORNIA**
County of **ORANGE**

On **FEBRUARY 13, 2007**    , before me,    **M. SISON**    , Notary Public,
personally appeared  **DOUG POLLOCK XX**    personally known to me –OR– _____
proved to me on the basis of satisfactory evidence, to be the person(s) whose
name(s) is/are subscribed to the within instrument and acknowledged to me that
he/she/they executed the same in his/her/their authorized Capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal

M. SISON
Commission # 1613586
Notary Public - California
Orange County
My Comm. Expires Oct 16, 2009

_____
M. SISON

(Notary Seal)